UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Commodity Futures Trading Commission,<br><br>                  Plaintiff,<br><br>              v.<br><br>Andre Flotron,<br><br>                  Defendant. | Case No. 18-158 (VLB) |

**FINAL JUDGMENT AND CONSENT ORDER FOR INJUNCTION,
CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST
DEFENDANT ANDRE FLOTRON**

### I. INTRODUCTION

On January 26, 2018, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendant Andre Flotron ("Flotron" or "Defendant") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for engaging in a manipulative and deceptive scheme to spoof in the precious metals futures markets, in violation of Section 4c(a)(5)(C) of the Commodity Exchange Act ("Act"), 7 U.S.C. § 6c(a)(5)(C) (2012), Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a)(1) and (3), 17 C.F.R. § 180.1(a)(1), (3) (2018).

### II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant without a trial on the merits or any further judicial proceedings, Defendant:

1. Consents to the entry of this Final Judgment and Consent Order for Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Andre Flotron ("Consent Order");

2. Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges service of the summons and Complaint;

4. Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and 28 U.S.C. §§ 1331, 1345 (2012);

5. Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act;

6. Admits that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

7. Waives:

   (a) Any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2018), relating to, or arising from, this action;

   (b) Any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–53, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

**(c)** Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

**(d)** Any and all rights of appeal from this action;

8. Consents to the continued jurisdiction of this Court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendant now or in the future resides outside the jurisdiction of this Court;

9. Agrees that he will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

10. Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect his: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party. Defendant shall comply with this agreement, and shall undertake all steps necessary to ensure that all of his agents and/or employees under his authority or control understand and comply with this agreement;

11. Consents to the entry of this Consent Order without admitting or denying the allegations of the Complaint or any findings or conclusions in this Consent Order, except as to jurisdiction and venue, which he admits;

12. Consents to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and, for that limited purpose only, agrees that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

13. Does not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party, other than a: statutory disqualification proceeding; proceeding in bankruptcy, or receivership; or proceeding to enforce the terms of this Order. Defendant does not consent to the use of this Consent Order, including the findings of fact or conclusions of law herein, by any other party in any other proceeding.

14. Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 36 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against him, whether inside or outside the United States; and

15. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendant in any other proceeding.

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact,

Conclusions of Law, injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), as set forth herein.

**THE PARTIES AGREE TO THE ENTRY OF THIS ORDER IN WHICH THE COURT HEREBY FINDS:**

**A.   Findings of Fact**

   **The Parties to this Consent Order**

16.   Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

17.   Defendant was employed by UBS as a trader from at least 2008 to January 2014. Defendant has never been registered with the Commission in any capacity. He is a Swiss national.

18.   From at least August 2008 through at least November 2013 (the "Relevant Period"), Defendant Flotron placed large orders in the precious metals futures markets with the intent to cancel the orders before execution (the "Spoof Orders"). Defendant intended for the Spoof Orders to induce other market participants to transact on smaller, "Genuine Orders" that Defendant placed on the opposite side of the market.

19.   When Defendant's Genuine Order was a buy order, his Spoof Order was an offer to sell. In placing Spoof Orders to sell, Defendant intended to send market participants a signal of greater supply to create the misimpression that the price would likely decline and trick market participants into transacting on his Genuine Orders to buy.

20. When Defendant's Genuine Order was an offer to sell, his Spoof Order was a buy order. In placing Spoof Orders to buy, Defendant intended to send market participants a signal of greater demand to create the misimpression that the price would likely rise and trick market participants into transacting on his Genuine Orders to sell.

21. In placing the Spoof Orders, Defendant gave market participants the impression that he actually wanted to buy or sell the number of contracts in the Spoof Orders when, in reality, he did not.

22. Examples of Defendant's spoofing include the following:

*July 1, 2013*

23. On July 1, 2013, at 10:11:06:151, Defendant placed a 1-lot Genuine Order to sell August-delivery Gold Futures at a price of $1238.50. At the time of placement, the order was two ticks away from the best offer. At 10:11:23.173, with his 1-lot Genuine Order still pending, Defendant placed a 111-lot Spoof Order to buy August-delivery Gold Futures at $1237.90. At the time of placement, the 111-lot order was three ticks below the best bid. The 111-lot Spoof Order increased the visible demand on the buy side of the order book by over 90%.

24. Within 1.2 seconds of placing the 111-lot order, the market moved two ticks up, filling Defendant's 1-lot sell order. Over the next 29 seconds, Defendant's 111-lot Spoof Order remained at least four ticks away from the market price. But at 10:11:54.543, the price dropped to $1238.10, only two ticks away from Defendant's 111-lot Spoof Order. Less than one second after this price drop, Defendant cancelled his 111-lot Spoof Order.

6

*October 17, 2013*

**25. On October 17, 2013, at 11:15:33.964, Defendant placed a 1-lot Genuine Order to buy December-delivery gold futures at $1319.10. At the time this order was placed, it was one tick away from the best bid. At 11:15:37:060, Defendant placed a 99-lot Spoof Order to sell December-delivery gold futures at $1319.60. At the time it was placed, this 99-lot Spoof Order was four ticks away from the best offer. The 99-lot Spoof Order more than doubled the visible supply on the sell side of the Order Book and was over five times larger than the total volume at any visible price level.**

**26. No trades occurred in the market for the next four seconds. Then, at 11:15:41.248, Defendant modified his 99-lot Spoof Order to sell down one tick, to $1319.50. Less than one second later, Defendant's 1-lot Genuine Order to buy at $1319.10 was filled. Defendant then placed four additional 1-lot Genuine Orders to buy at $1319.10 in succession. Three were filled immediately and the fourth sat pending for four seconds, at which point Defendant modified his 99-lot Spoof Order down one tick again to $1319.40. Less than two seconds later, the fourth 1-lot buy order was filled. Again, Defendant placed four successive 1-lot Genuine Orders to buy at $1319.10, three of which were filled over the next four seconds. After the fourth 1-lot buy order had been pending for about three seconds, the volume on the buy side of the Order Book significantly increased. Specifically, 60 lots were added to the buy-side in the course of a second and the market price immediately went up to $1319.20, only two ticks away from Defendant's 99-lot**

Spoof Order. Approximately one second after the price went up, Defendant cancelled the 99-lot Spoof Order in its entirety.

B.   Conclusions of Law

Jurisdiction and Venue

27.   This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2012) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

28.   Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because the acts and practices in violation of the Act occurred within this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(3) (2012).

29.   By the conduct described in paragraphs 1 through 26 above, Defendant engaged in trading, practices, or conduct on or subject to the rules of a registered entity that is, is of the character of, or is commonly known as, "spoofing" (bidding or offering with the intent to cancel the bid or offer before execution), in violation of Section 4c(a)(5)(C) of the Act, 7 U.S.C. § 6c(a)(5)(C) (2012).

30. By the conduct described in paragraphs 1 through 26 above, Defendant, in connection with a contract for future delivery on a registered entity, intentionally or recklessly, (1) used or employed, or attempted to use or employ, manipulative devices, schemes, or artifices to defraud, or (2) engaged, or attempted to engage, in acts, practices, or courses of business, which operated or would have operated as a fraud or deceit upon market participants, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a)(1) and (3), 17 C.F.R. § 180.1(a)(1), (3) (2018).

## IV. INJUNCTION

**IT IS HEREBY ORDERED THAT:**

31. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Defendant is permanently restrained, enjoined and prohibited from directly or indirectly:

   a. engaging in trading, practices, or conduct on or subject to the rules of a registered entity that is, is of the character of, or is commonly known as "spoofing" (bidding or offering with the intent to cancel the bid or offer before execution), in violation of Section 4c(a)(5)(C) of the Act, 7 U.S.C. § 6c(a)(5)(C) (2012);

   b. intentionally or recklessly (1) using or employing, or attempting to use or employ, any manipulative device, scheme or artifice to defraud or (2) engaging, or attempting to engage, in any act, practice, or course of business, which would operate as a fraud or deceit upon any person, in violation of Section 6(c)(1) of the Act, 7 U.S.C. §

9(1) (2012), and Regulation 180.1(a)(1) and (3), 17 C.F.R. § 180.1(a)(1), (3) (2018).

32. Defendant is also restrained, enjoined and prohibited, for a period of one year from the date of entry of this consent order, from directly or indirectly:

a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2018)), for his own personal account or for any account in which he has a direct or indirect interest;

c. Having any commodity interests traded on his behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018); and/or

g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2018)), agent or any other officer or employee of any

person (as that term is defined in 7 U.S.C. § 1a(38) (2012)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

## V. CIVIL MONETARY PENALTY

A. Civil Monetary Penalty

33. Defendant shall pay a civil monetary penalty in the amount of one hundred thousand dollars ($100,000) ("CMP Obligation"), within ten days of the date of entry of this Consent Order. If the CMP Obligation is not paid in full within ten days of the date of entry of this Consent Order, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2012).

34. Defendant shall pay his CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

>MMAC/ESC/AMK326
>Commodity Futures Trading Commission
>Division of Enforcement
>6500 S. MacArthur Blvd.
>HQ Room 181
>Oklahoma City, OK 73169
>(405) 954-6569 office
>(405) 954-1620 fax
>9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defendant shall contact Marie Thorne or her successor at the address above to receive payment instructions

and shall fully comply with those instructions.  Defendant shall accompany payment of the CMP Obligation with a cover letter that identifies Defendant and the name and docket number of this proceeding.  Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

B.Provisions Related to Monetary Sanctions

35.Partial Satisfaction:  Acceptance by the Commission of any partial payment of Defendant's CMP Obligation shall not be deemed a waiver of his obligation to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

## VI.MISCELLANEOUS PROVISIONS

36.Notice:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

Manal Sultan
Deputy Director
Division of Enforcement
Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, NY 10005
Phone:  646-746-9761
Email:  msultan@cftc.gov

**Notice to Defendant Andre Flotron:**

>Daniel P. Filor
>Greenberg Traurig, LLP
>200 Park Avenue
>New York, NY  10166
>Phone: 212-801-6758
>Email: filord@gtlaw.com

**All such notices to the Commission shall reference the name and docket number of this action.**

**37.     Change of Address/Phone:  Until such time as Defendant satisfies in full his CMP Obligation as set forth in this Consent Order, Defendant shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten calendar days of the change.**

**38.     Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.**

**39.     Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.**

**40.     Waiver:  The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the**

breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

41.	**Continuing Jurisdiction of this Court:** This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendant to modify or for relief from the terms of this Consent Order.

42.	**Injunctive and Equitable Relief Provisions:** The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendant, upon any person under his authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendant.

43.	**Counterparts and Facsimile Execution:** This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

44. **Contempt:** Defendant understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

45. **Agreements and Undertakings:** Defendant shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Final Judgment and Consent Order for Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendant Andre Flotron* forthwith and without further notice.

IT IS SO ORDERED on this __5__ day of __February__, 2018.

>  _____/s/_____
>  **Hon. Vanessa L. Bryant, U.S.D.J.**

CONSENTED TO AND APPROVED BY:

By: _____
    Andre Flotron

_____
Daniel P. Filor
Greenberg Traurig, LLP
200 Park Ave.
New York, NY 10166
Phone: (212) 801-6758
filord@gtlaw.com

Date: 09/28/2018

_____
Samuel Wasserman
David Oakland
Patryk Chudy
Manal Sultan

Commodity Futures Trading
Commission
140 Broadway, 19th Floor
New York, NY 10005
Phone: (646) 746-9700
swasserman@cftc.gov

Dated 12/20/2018